**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| KEVIN JOSEPH BALLARD, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | )   No. 4:17-CV-01402 JAR |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Movant Kevin Ballard's motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, as supplemented. (Doc. Nos. 1, 4, 15, 16, 19, 23). For the following reasons, Ballard's motion is denied.[1] Also pending is Ballard's motion for summary judgment (Doc. No. 22), which is denied on the merits, and motions for ripeness (Doc. Nos. 24, 25), which are denied as moot in light of the Court's ruling.

**I.   Background**

On April 26, 2016, Ballard pled guilty to a one-count indictment pursuant to a written plea agreement and Federal Rule of Criminal Procedure 11(c)(1)(A). The single count indictment charged Transportation of Child Pornography in violation of 18 U.S.C. § 2252A(a)(l). At his plea hearing, Ballard acknowledged, under oath, that between November 4, 2015, and November 6, 2015, in the Eastern District of Missouri, he knowingly transported images of child pornography in interstate and foreign commerce, as follows:

---

[1] Because Ballard's motion can be conclusively determined based on the motion, files and records of the case, an evidentiary hearing need not be held. See Shaw v. United States, 24 F.3d 1040, 1043 (8th Cir. 1994).

On November 4, 2015, an undercover law enforcement officer was conducting an authorized undercover investigation. As part of that investigation, the officer created the persona of a mother named "Melissa" who had a minor child. The undercover officer posted an advertisement in the St. Louis area Craigslist website. Ballard responded to that ad. Ballard and the undercover officer began to communicate by e-mail, and then by texting on their cellphones. Ballard said he liked little girls, and that he had sexually assaulted his ex-girlfriend's three-year old niece by rubbing his penis on her genitals and ejaculating on her. Ballard now states he did not sexually assault the girl, but made up the statements to facilitate the conversations. During the communications with the undercover officer, Ballard also said he had a large quantity of videos and pictures that included "very young, four and up," and described in detail some of the child pornography videos in his collection. Ballard sent two images to the undercover officer. One picture was of a prepubescent minor female exposing her breasts, and the other was of a male with an erect penis standing next to the toddler, with his penis close to the toddler's mouth.

On November 5, 2015, Ballard asked the undercover officer if he liked the images Ballard had sent to him. Ballard also discussed wanting to watch "Melissa" (the undercover officer's persona) sexually assault her daughter. Ballard discussed wanting to show "Melissa" more pictures and videos of child pornography. He discussed that when he was 16, he and his six-year old sister performed oral sex on each other, and he rubbed his penis against her vagina. Ballard added that when he was 20, he assaulted his ten-year old cousin. As the conversation continued, he discussed how he wanted to engage in sex acts with "Melissa's" eight-year old daughter. Ballard now states he did not sexually assault his ten-year old cousin, but made up the statement to facilitate the conversation.

On November 6, 2015, Ballard again communicated with the undercover officer and e-mailed – via the internet – child pornography images to the officer. The images depicted prepubescent minor children engaged in sadistic, or masochistic conduct, or other acts of violence. As Ballard and the officer continued to communicate on November 6, 2015, they decided to meet. When Ballard arrived, he was arrested and read his Miranda Rights. Ballard waived his rights and admitted to the police that he sent child pornography pictures to the undercover office from his residence in St. Louis via the internet. He gave officers permission to search his residence and computers. Ballard was then taken to the St. Louis County Police Department Headquarters where the interview continued.

In a video-recorded interview, Ballard admitted that he texted "Melissa," and e-mailed child pornography pictures to her. He said the images he sent to "Melissa" were pictures he obtained through the internet. He said he thought the images were of eight or nine-year old girls, but that they could have been as young as three or four years of age. He said that he traded child pornography on Yahoo Messenger with other individuals. When asked about molesting his sister and cousin, Ballard admitted communicating that to "Melissa," but that it was just talk and that he really did not molest them. He also said he would not have engaged in sex with "Melissa's" daughter even if he had had a chance.

Ballard gave the officers permission to view his online accounts. When the officer examined the contents of Ballard's Yahoo e-mail account, he observed several e-mails Ballard sent to other individuals that contained child pornography. Some of these videos of child pornography depicted prepubescent minor children engaged in sexually explicit conduct portraying sadistic, or masochistic conduct, or other depictions of violence. Forensic examination of Ballard's computer equipment revealed images of child pornography hidden on the devices.

3

The forensic examiner located approximately 1500 images of child pornography, including the deleted images, and over 200 video files of child pornography, including deleted videos, on a Toshiba hard drive. The images depicted minors and prepubescent minors engaged in sexually explicit conduct, bondage, and bestiality. (Plea Agreement, Case No. 4:15-CR-00506, Doc. No. 32 at 3-8; Plea Transcript, Doc. No. 63 at 12-15).

The transcript of the plea hearing reflects that the Court closely examined Ballard regarding the voluntariness of his plea, and found the plea was entered "freely, voluntarily, and intelligently, with a full understanding of the charges and the consequences of the pleas, with an understanding of his rights attending a jury trial, [and] the effect of the pleas of guilty on those rights." (Plea Transcript at 24). Ballard stated that he was fully satisfied with his attorney. (Id. at 5, 8).

On August 2, 2016, the Court sentenced Ballard to a term of imprisonment of 168 months for the crime of Transportation of Child Pornography, followed by a life term of supervised release. A notice of appeal was filed on August 15, 2016. (Case No. 4:15-CR-00506, Doc. No. 46). The appeal was dismissed on October 28, 2016 on Ballard's motion. (Id., Doc. No. 53).

On April 28, 2017, Ballard filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence raising six grounds for relief:

1. Counsel was ineffective for failing to request credit for time served (Doc. No. 1 at 7-8);

2. Counsel was ineffective for failing to make an effective case for a downward variance under the guidance of section 2G2.2 of the Sentencing Guidelines (id. at 8-17);

3. Counsel was ineffective for failing to correct false information at sentencing (id. at 17-19);

4. Counsel was ineffective for failing to advocate for a section 5K1.1 departure from the Sentencing Guidelines (id. at 19-20);

5. Counsel was ineffective for failing to object to forfeiture of his property (id. at 21-22);

6. Counsel was ineffective for failing to challenge the length and conditions of his release. (Id. at 22-29). Here, Ballard contends that supervised release is a double jeopardy violation (id. at 29-34) and that the court lacked jurisdiction of the underlying criminal case (id. at 34-42).

On May 30, 2017, Ballard filed a supplement to his § 2255 motion. (Doc. No. 4). The Government filed a response (Doc. No. 7) and Ballard replied (Doc. No. 9). On August 4, 2017, the Court granted the Government leave to amend its response to address Ballard's argument that the District Court lacked jurisdiction in his criminal case. (Doc. Nos. 11, 12). Ballard then filed a reply to the Government's amended response. (Doc. No. 13).

Thereafter, Ballard filed various supplements to his § 2255 motion (Doc. Nos. 15, 16, 19), which the Court treated as supplemental authority as opposed to additional claims (Doc. No. 20). When granted an opportunity to respond to Petitioner's supplemental authority, the Government indicated that it would rest on its prior response. (Doc. No. 21). Ballard then moved for summary judgment, arguing that because the Government failed to respond to the new case law incorporated in his supplements, it provided no grounds for denying his motion. (Doc. No. 22). Ballard filed another supplement to his § 2255 motion on August 1, 2019. (Doc. No. 23). Ballard's § 2255 motion is now fully briefed and ready for disposition.

## II.   Standard of review

It is well-established that an ineffective assistance of counsel claim is properly raised under 28 U.S.C. § 2255 rather than on direct appeal. United States v. Davis, 452 F.3d 991, 994 (8th Cir. 2006); United States v. Cordy, 560 F.3d 808, 817 (8th Cir. 2009). The burden of demonstrating

ineffective assistance of counsel is on a defendant. United States v. Cronic, 466 U.S. 648, 658 (1984); United States v. White, 341 F.3d 673, 678 (8th Cir. 2003).

To prevail on an ineffective assistance of counsel claim, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. Anderson v. United States, 393 F.3d 749, 753 (8th Cir.), *cert. denied*, 546 U.S. 882 (2005); Strickland v. Washington, 466 U.S. 668, 687–88 (1984). To establish the deficient performance prong of the Strickland test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." Id. at 688. Review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689. Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." United States v. Rice, 449 F.3d 887, 897 (8th Cir. 2006) (quoting Strickland, 466 U.S. at 690). Courts also seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. Carter v. Hopkins, 92 F.3d 666, 671 (8th Cir. 1996).

To establish the prejudice prong of the Strickland test, one must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Anderson, 393 F.3d at 753-54 (quoting Strickland, 466 U.S. at 694). ). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. When determining if prejudice exists, the court "must consider the totality of the evidence before the judge or jury." Id. at 695; Williams v. United States, 452 F.3d 1009, 1012–13 (8th Cir. 2006).

The first prong of the Strickland test, that of attorney competence, is applied in the same manner to guilty pleas as it is to trial convictions. The prejudice prong, however, is different in the context of guilty pleas. Instead of merely showing that the result would be different, the defendant who has pled guilty must establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Matthews v. United States, 114 F.3d 112, 114 (8th Cir. 1997).

A court need not even determine whether a movant meets the "performance" prong of the Strickland test because both the United States Supreme Court and the Eighth Circuit Court of Appeals have noted that "'[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, *which we expect will often be so*, that course should be followed.'" Young v. Bowersox, 161 F.3d 1159, 1160 (8th Cir. 1998 ); see also Kingsberry v. United States, 202 F.3d 1030, 1032 (8th Cir.) (if the petitioner makes an insufficient showing on one component, the court need not address both components), *cert. denied*, 531 U.S. 829 (2000).

### III.   Discussion

#### A.  § 2255 motion

##### 1.  Failure to request credit for time served

Ballard first alleges his counsel was ineffective for failing to request credit pursuant to section 5G1.3(b) of the Sentencing Guidelines for the ten months he was held pending sentencing. Subsection (b) provides that if the defendant is serving an undischarged term of imprisonment for an offense that "is relevant conduct to the instant offense of conviction," the sentence for the instant offense shall be "adjust[ed] ... for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons[.]" U.S.S.G. §

5G1.3(b). While Ballard had a pending state probation revocation for possession of a controlled substance (see Case No. 4:15CR00506, Final Presentence Report ("PSR"), Doc. No. 40 at ¶ 51), that offense was not "relevant conduct to the instant offense of conviction." Thus, section 5G1.3(b) does not apply.

The Government asserts that Ballard is likely referring to section 5G1.3(d), which provides that, "[i]n any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(d). The Court considered § 5G1.3(d) at sentencing:

> I'll also order that the sentence run concurrently with the sentence imposed in the probation revocation in the Circuit Court of St. Louis County, under docket number 12SL-CR00702-01. I know the guidelines would suggest that perhaps it would be consecutive, but given the length of the sentence, and I think that's more than sufficient to meet the statutory sentencing objectives. I'll order that this sentence run concurrent with that sentence.

(Case No. 4:15CR00506, Sentencing Transcript, Doc. No. 52 at 14:21-15:3). Thus, the Government argues, Ballard received a sentence concurrent with the undischarged term of imprisonment in his state case and has suffered no prejudice. (Doc. No. 7 at 11). Moreover, Ballard concedes in his reply that the Bureau of Prisons did in fact credit him for the ten months he spent in pre-trial detention. (Doc. No. 9 at 2). This claim is therefore denied.

### 2. Failure to seek a downward variance

Next, Ballard argues his counsel failed to make an effective case for a downward variance under section 2G2.2 of the Sentencing Guidelines. This claim is refuted both by the record and Ballard's sworn testimony.

An initial PSR was prepared on June 28, 2016. Ballard's conduct resulted in a base offense level of 22. (PSR at ¶ 27). A two-level enhancement was assessed because the material involved a prepubescent minor or a minor who had not attained the age of 12 years. (Id. at ¶ 28). A five-level enhancement was assessed because the offense involved distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain. (Id. at ¶ 29). A four-level enhancement was assessed because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. (Id. at ¶ 30). A two-level enhancement was assessed as the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material or for accessing with intent to view the material. (Id. at ¶ 31). As the offense involved 600 or more images, the offense level was increased by five levels. (Id. at ¶ 32). A three-level reduction for acceptance of responsibility was reported. (Id. at ¶¶ 38, 39). Accordingly, Ballard's total offense level was determined to be 37. (Id. at ¶ 40). Ballard was found to have a criminal history score of 4 (id. at ¶ 47), placing him in criminal history category III (id. at ¶ 49). Based upon a total offense level of 37 and a criminal history category of III, Ballard's guideline imprisonment range was 262 months to 327 months. However, pursuant to section 5G1.2(d), where the statutorily authorized maximum sentence (here 20 years) is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence, i.e., 240 months. (Id. at ¶¶ 79, 80). On July 18, 2016, Ballard advised that he had no objections to the contents of the PSR. (Doc. No. 36). The final PSR was filed on July 26, 2016. (Doc. No. 40).

Under the terms of the Plea Agreement, either party could request a sentence above or below the sentencing guideline range determined by the Court. (See Plea Agreement at ¶ 2). Defense counsel filed a sentencing memorandum requesting the Court sentence Ballard below the

advisory Sentencing Guideline with lifetime supervision (Doc. No. 38), as well as letters of support, which the Court considered at sentencing. (Sentencing Tr. at 7:1-6, 11:16-17). The Government also sought a downward variance between 161[2] and 210 months' imprisonment, followed by lifetime supervision. (Doc. No. 42 at 2). In addition, the Court reviewed the PSR and heard argument from counsel. The Court then granted a downward variance:

> [W]hen I consider the 3553(a) factors, I do think that the Government is being very fair and reasonable. They are taking into account certain issues with regard to the way the guideline calculations work in this case … By the guidelines, [Ballard] effectively wouldn't get any consideration for his acceptance of responsibility. Some of the enhancements on the child pornography cases would appear to be extreme. So the Court does believe that a downward variance in this case is appropriate, but that a sentence of 168 months in the Bureau of Prisons is sufficient but not greater than necessary to meet the statutory sentencing objectives. It will properly hold the defendant accountable, and achieve parity with sentences of similarly situated individuals.

Ballard acknowledges the variance as "generous" and "well below the maximum," but asserts that given the current state of the sentencing laws for child pornography offenses, if his counsel had argued for the mandatory minimum, "it is extremely likely she would have received it, and certain the sentence would have been lower than 168 months." (Doc. No. 1 at 16-17).

Ballard's conclusory allegations fall well short of establishing that his counsel's performance fell below an objective standard of reasonableness, and that there exists "a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." Hill, 574 U.S. at 59. Instead, Ballard acknowledged that the sentencing decision was left to the Court and that the Court was not bound by the parties' agreement. He testified that he accepted his punishment and was prepared for whatever sentence the Court imposed. (Sentencing Tr. at 7:25-8:1, 11:22). His sentence was at the bottom of the

---

[2] Due to a typographical error in its sentencing memorandum, the Government indicated it would go with a range of between 161 to 210 months instead of 168 months. (Sentencing Tr. at 10:18-24).

guideline range. A sentence within the guideline range is presumptively reasonable. See United States v. Torres, 552 F.3d 743, 747-48 (8th Cir. 2009). Ballard's arguments for why he should have received a below guideline sentence are not compelling enough to overcome this presumption.

Further, his claim is refuted by his testimony that his counsel had done everything he asked her to do and that he was "very" satisfied with her services. (Plea Tr. at 5-6; Sentencing Tr. at 3). This claim is therefore denied.

### 3. Failure to correct false information at sentencing

Next, Ballard argues his counsel was ineffective for failing to correct the Court's impression that he was driving to meet a minor to have sex. According to Ballard, this was "a significant part of the rationale for the sentence" that affected the amount of departure, thereby prejudicing him. (Doc. No. 1 at 19). Again, the record refutes Ballard's claim.

The PSR recounts that Ballard admitted discussing having sex with "Melissa's" daughter but said he would not have had sex with her if they had met. (PSR at ¶ 17). Likewise, the Plea Agreement notes that Ballard said he would not have engaged in sex with "Melissa's" daughter even if he had had the chance. (Plea Agreement at 6). At sentencing, the Government referenced Ballard's assertion. (Sentencing Tr. at 10:11-15). Likewise, the Court referred to what Ballard said he was going to do, stating, "[N]o one will know exactly what you were going to do when you were going to meet the undercover detective, but certainly the things that you said suggested that you wanted to have sex with her daughter." (Id. at 12:7-11). Thus, the Court was fully aware of Ballard's argument, and defense counsel was not ineffective because the matter was already on the record. Further, Ballard fails to show that this had "an ascertainable and dramatic impact" on his case, see Zant v. Stephens, 103 S. Ct. 2733, 2756 (1983), particularly in light of Ballard's pattern

11

of criminal conduct occurring over a period of time and involving numerous communications and some 1500 images and 200 videos.

Ballard further argues that his counsel should have either hired an expert witness to inform the Court that conversations of this nature have no correlation to actual abuse, or provided statistics on the rate of escalation among child pornography offenders. As the Government notes, however, this is mere speculation. After considering all of the § 3553(a) sentencing factors, the Court concluded that a downward variance was appropriate, but that a sentence of 168 months was sufficient but not greater than necessary to hold Ballard accountable and achieve parity with sentences of similarly situated individuals. This claim is denied.

### 4. Failure to request a departure based on section 5K1.1

Ballard further argues his counsel was ineffective for failing to request a downward departure under section 5K1.1 of the Sentencing Guidelines based on his allegedly substantial assistance to the Government in the investigation of other crimes. Specifically, Ballard asserts that he agreed to let officers view his email accounts, which then led to the identification of four other individuals who received and distributed files.

Subject to limited exceptions, none of which apply here, a sentencing court may not depart below the mandatory minimum sentence absent a motion by the Government based on a defendant's substantial cooperation. See United States v. Johnson, 988 F.2d 859 (8th Cir. 1993); United States v. Hawley, 984 F.2d 252, 254 (8th Cir. 1993); United States v. Buckendahl, 251 F.3d 753, 764 (8th Cir. 2001). Ballard argues his counsel was ineffective for failing to argue grounds for downward departure; however, the Government did not file a motion for downward departure. Therefore, the Court could not have departed downward on this basis. When a claim has no chance

of proving meritorious, counsel is not ineffective for failing to raise it. Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir. 1994). This claim is denied.

### 5. Failure to challenge forfeiture

Ballard argues his counsel was ineffective for failing to object to the forfeiture of certain items of property seized as part of his arrest. He contends that because the forensic examiner only located child pornography on the Toshiba 200 GB hard drive, the majority of property seized had no connection to the crime. Ballard is not entitled to relief on this claim.

First, challenges to a forfeiture order are not cognizable in a § 2255 proceeding. In United States v. Bernard, 351 F.3d 360, 361 (8th Cir. 2003), the Eighth Circuit joined the majority of circuits in holding that 28 U.S.C. § 2255 applies only to prisoners claiming a right to be released from custody, not prisoners challenging fines, restitution orders, or forfeiture orders related to their criminal sentence. To the extent that Ballard arguably is asserting that any deficient performance relating to the forfeiture may have impacted his decision to plead guilty, he has not offered sufficient allegations or evidence to show such prejudice.

It is well documented in the record that Ballard knowingly and voluntarily entered into an agreement with the Government on numerous sentencing issues, including forfeiture. Specifically, Ballard agreed to forfeit his interest in all items seized by law enforcement officials during the course of their investigation, including, but not limited to, a Sony Vaio laptop computer, Toshiba 200GB hard drive, Samsung Galaxy cell phone, Seagate external hard drive, Apple iPhone 4, CDs, DVDs, Apple iPod, Samsung Digimax Camera, Nikon Digital Camera, Digital Concepts Camera, Nikon Coolpix Camera, Pentax Optio 550 Camera, Kodak Adantix F350 Camera, Exilim Casio Camera, Kodak Easyshare Camera, Kodak KB-32 Camera, Bell-Howell Camera, Samsung L200 Camera, Canon ZR-80 Camcorder, and cassette tapes. Ballard further admitted that all property

and assets seized by law enforcement officials during their investigation constitutes the proceeds of his illegal activity, were commingled with illegal proceeds or were used to facilitate the illegal activity. (Plea Agreement at 13-14). At the plea hearing, Ballard acknowledged that he had been fully informed of the forfeiture aspect of his plea, that he had thoroughly discussed the agreement with his counsel, and that he understood he would be giving up any interest he had in these items of property. (Plea Tr. at 21:7-21:15).

Lastly, there is no support in either the statutory scheme or this Circuit's case law for Ballard's argument. Pursuant to the criminal forfeiture statute, upon conviction of a federal child exploitation offense, the defendant shall forfeit to the United States "any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property." 18 U.S.C. § 2253(a)(3). There is nothing in the statute which indicates that only a portion of the "property" can be forfeited. See, e.g., United States v. Hull, 606 F.3d 524, 528-29 (8th Cir. 2010) (upholding a forfeiture order of real property, which included the defendant's house, as well as nineteen acres of rural land, upon a conviction of two child pornography offenses, and noting that "[o]nce it is established that the 'property' subject to forfeiture consists of the entire acreage, nothing in the statute allows the court to order forfeiture of less than this 'property' "). Therefore, there was nothing for Ballard's counsel to object to at sentencing. See Rodriguez, 17 F.3d at 226 (counsel is not ineffective for failing to make a meritless argument). This claim is denied.

### 6. Failure to challenge length/conditions of release

Next, Ballard argues that his counsel specifically requested "the maximum of lifetime supervision" and agreed to unnecessarily strict conditions of release that violate Eighth Circuit precedent and inhibit successful reintegration. (Doc. No. 1 at 22). He contends that given statistics

14

showing that pornography offenders have low rates of recidivism, it is not at all clear that supervision is necessary or that conditions – such as requiring sex offender therapy – need to be imposed for any reason. (Id. at 25). His contention has no merit.

The PSR recommended lifetime supervision (PSR at pr. 84), and, as previously noted, Ballard had no objection to the contents of the PSR. The Court imposed lifetime supervision "based upon all of the facts and circumstances in this case, the nature of the charges, and the nature of the circumstances." (Sentencing Tr. at 15:24-16:3). Sentences of lifetime terms of supervised release under similarly strict conditions have been upheld as substantively reasonable. Haney v. United States, No. 4:13CV02341 AGF, 2017 WL 878032, *4 (E.D. Mo. Mar. 6, 2017) (citing United States v. Hyer, 498 F. App'x 658, 661 (8th Cir. 2013). See also United States v. Morais, 670 F.3d 889 (8th Cir. 2012) (concluding, where defendant pled guilty to two counts of possessing child pornography, where 97-121 months was the custodial range, and where the total offense level was 30 and defendant's criminal history Category was I, a low-end Guidelines sentence of 97 months in prison plus a life time of supervision was not substantively unreasonable). This claim is denied.

### a. Supervised release violates double jeopardy

Also in claim 6, Ballard argues that supervised release is a second punishment in violation of the double jeopardy clause. This claim fails on the merits. First, "a plea of guilty admits all of the elements of a criminal charge, and waives all challenges to the prosecution either by direct appeal or by collateral attack, except challenges to the court's jurisdiction." Mack v. United States, 853 F.2d 585, 586 (8th Cir. 1988). Second, "[t]he term of imprisonment together with the term of supervised release … required by statute, form only one sentence," and do not constitute double

15

jeopardy." Haney, 2017 WL 878032, *4 (quoting Nolan v. United States, No. 4:06CV0007 RWS, 2007 WL 3564597, at *5 (E.D. Mo. Nov. 15, 2007)).

### b. Lack of jurisdiction

In claim 6, Ballard further argues the district court lacked jurisdiction over his underlying criminal case. The jurisdictional element of § 2252A(a)(1) is satisfied if the Government proves that any child pornography was mailed, transported or shipped "using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer." 18 U.S.C. § 2252A(a)(1). The Commerce Clause confers regulatory authority over the channels and instrumentalities of interstate commerce, including the internet. See, e.g., United States v. Morrison, 529 U.S. 598, 609 (2000) (citing United States v. Lopez, 514 U.S. 549, 558 (1995)); United States v. Havlik, 710 F.3d 818, 824 (8th Cir. 2013). Having admitted that he transported images of child pornography using the internet, Ballard "participated in 'a system that is inexorably intertwined with interstate commerce and thus properly within the realm of Congress's Commerce Clause power.'" United States v. Giboney, 863 F.3d 1022, 1026 (8th Cir. 2017) (quoting United States v. Trotter, 478 F.3d 918, 921 (8th Cir. 2007)). This claim is denied.

### B. Supplemental authority (Doc. Nos. 15, 16, 19, 23)

Ballard has supplemented his § 2255 motion with case law and other authority challenging, *inter alia*, the disparate treatment of sex offenders and the reasonableness of terms and conditions of supervised release in relation to child pornography cases. He also argues that the Guidelines' recommended sentences for child pornography offenses are based on unsound policy and that his sentence was disproportionately high when compared to others similarly situated.

Even if there were merit to Ballard's arguments, an issue the Court need not address, the fact remains that his sentencing guidelines range was – without objection – between 168 months to 210 months. His disagreement with this range rests ultimately with the Sentencing Commission and, through it, with Congress. United States v. Motto, 70 F. Supp. 2d 570, 579–80 (E.D. Pa. 1999), aff'd, 225 F.3d 651 (3d Cir. 2000). The fact that Ballard takes exception to the current state of the sentencing laws for child pornography offenses fails to demonstrate that his counsel was ineffective. Moreover, regardless of the sentencing guidelines, the Court thoroughly considered the facts and circumstances of the case and found the sentence of 168 months to be appropriate.

### C. Other pending motions

#### 1. Motion for summary judgment

Ballard urges the Court to grant his § 2255 motion because the Government declined to respond to his supplemental authority, thereby acknowledging its applicability to the instant case. This is not a valid basis for summary judgment. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). As discussed above, the Court has determined that Ballard is not entitled to the relief he seeks under § 2255 because he has not met his burden of showing Strickland ineffectiveness. Thus, Ballard's motion for summary judgment is denied on the merits.

#### 2. Motions for ripeness

In light of the Court's ruling herein, Ballard's motions are denied as moot.

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Movant Kevin Ballard's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, as supplemented [1] is **DENIED**.

**IT IS FURTHER ORDERED** that Movant's motion for summary judgment [22] is **DENIED** on the merits.

**IT IS FURTHER ORDERED** that Movant's motions for ripeness [24, 25] are **DENIED** as moot.

**IT IS FINALLY ORDERED** that this Court will not issue a certificate of appealability, as Ballard has not made a substantial showing of the denial of a federal constitutional right.

Dated this 29th day of September, 2020.

*John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**